MARKS v. STOLTS. · (No. 6598.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. MASTER AND SERVANT (§ 288*)—INJURY TO SERVANT—ASSUMPTION OF RISK.
    Where a chauffeur knew that the brake on the motor car he was driving was out of order, and that the machine was liable to start of its own motion, the question whether he assumed the risk of injury was for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

2. MASTER AND SERVANT (§ 278*)—INJURIES TO· SERVANT—EVIDENCE—SUFFICIENCY.
    In a personal injury action by a chauffeur, evidence held not to show the master guilty of negligence in furnishing a defective machine.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

3. MASTER AND SERVANT (§ 234*)—INJURIES TO SERVANT—DEFENSES.
    Where an experienced chauffeur voluntarily operates, in a populous city, a machine, the brakes of which he knows are defective, his conduct is such as to estop him, as a matter of law, from recovering from his employer for injuries resulting from the defect.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 684–686, 706–709; Dec. Dig. § 234.*]

    Ingraham, P. J., and Hotchkiss, J., dissenting.

Appeal from Special Term, New York County.

Action by Charles E. Marks against Julius W. Stolts, as president, etc. From a judgment granting defendant's motion to set aside the verdict, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Clifford C. Roberts, of New York City, for appellant.
Edward J. Walsh, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLAUGHLIN, J.  The defendant moved to set the verdict aside upon the exceptions taken during the trial and that it was contrary to evidence.  The motion was granted, and the appeal presents the question of whether any of the exceptions would be fatal to the judgment entered upon the verdict, and also whether the verdict is contrary to the evidence.

[1]  The court charged the jury:

"That, even though you find that the plaintiff knew of the defective condition of the dog, you cannot find from that fact that he assumed the risk of injury therefrom."

This, I think, was an erroneous instruction as to the law, and the exception thereto was well taken.  The question whether the defendant assumed the risk from the defective condition of the brake was for the jury.  Larsen v. Lackawanna Steel Co., 146 App. Div. 238, 130 N. Y. Supp. 887; Gorman v. Millikan, 142 App. Div. 207, 126 N. Y. Supp. 864; Milligan v. Clayville Knitting Co., 137 App. Div. 383, 121 N. Y. Supp. 763; Hurley v. Olcott, 134 App. Div. 631, 119 N. Y. Supp. 430, affirmed 198 N. Y. 132, 91 N. E. 270, 28 L. R. A. (N. S.) 238; Bria v. Westinghouse, Church, Kerr & Co., 133 App. Div. 346, 117 N. Y. Supp. 195.

The plaintiff, according to the testimony of his witness, Zoeller, knew of the defective condition of the brake and that the car was liable to start, as it is claimed it did on the occasion in question, at least two weeks before the accident occurred.  Zoeller testified that he saw it start of its own motion and that he called the plaintiff's attention to it.  The plaintiff was an experienced chauffeur.  He had been engaged for upwards of five years in operating automobiles and for three or four weeks the one in question.  If he knew that the brakes were defective, and by reason of that fact the machine liable to start of its own motion, then it was for the jury to say whether, by placing himself in the position which he did immediately prior to the time he was injured, he did not assume that risk.  Under such circumstances, as was pointed out by Mr. Justice Miller in Hurley v. Olcott, supra, the assumption of risk had to be submitted to the jury.  He said:

"The evidence shows: That the plaintiff was an experienced workman. That he had observed the rope used for the boom line and knew of its being broken, and that the practice of piling the columns one above the other had been continued for some time to his knowledge.  It does not appear that he knew that the derrick was out of plumb.  However, a jury might well have found that the plaintiff fully understood and appreciated the dangers of the work as it was prosecuted, and that, by continuing in the service, he assented thereto.  But, under the statute, that question had to be submitted to the jury."

In Milligan v. Clayville Knitting Co., supra, a judgment in favor of the plaintiff was reversed because the court had, in effect, withdrawn from the jury the question of assumption of risk.  Mr. Justice Spring, who delivered the opinion of the court, said:

"If the risk is an obvious one, plain to be seen by the employé and due to the omission of the employer, the employé has no right to assume that his master has performed his duty and made the place safe.  It is obvious that the master has not performed his obligation to the servant and the

latter performs his work knowing of this delinquency. He cannot then, if injury results by reason of this apparent, plain omission of his employer, relieve himself from assuming the risks upon the ground that the master did not perform his duty."

The plaintiff not only knew that the brake was out of repair, but he also knew, if the testimony of one of his witnesses is to be believed, that it had not been repaired during the time plaintiff had been operating the machine.

[2] I am also of the opinion that the verdict is against the evidence. Defendant's witness Stolts, one of its officers, testified that a short time before the accident he asked the plaintiff if the brake had been repaired and a new dog put in, and the plaintiff told him that it had; that he put the new dog in himself. Stolts was corroborated by defendant's witnesses McCarthy and Shepard. The plaintiff had been furnished tools with which to make repairs of this kind, and he testified that to put in a new dog would take but a short time. It is improbable that the plaintiff, with his experience in operating automobiles, would risk his own life, to say nothing of the lives of others, by taking the car out with a defective brake when it could be remedied in a very short time. It is equally incredible that the defendant, with knowledge that the brake was defective, would assume the responsibility of sending the car out when the repairs could have been made at a very slight expense and in a very short time.

[3] There is another reason which it seems to me should be fatal to a recovery in this action. In a populous city like New York, where thousands of people are in the streets at all hours of the day and night, an experienced chauffeur, unless it be under exceptional circumstances, who runs an automobile in the street, knowing that the brake is defective, ought to be estopped, as matter of law, from recovering damages against his employer for injuries occasioned by such defect.

I think the order appealed from should be affirmed, with costs.

LAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). Plaintiff had for some seven months before the accident been employed by defendant as a chauffeur on automobile trucks. The truck which caused the accident had been owned by defendant for some six or seven weeks and had been driven by plaintiff for some two or three weeks. It was fitted with an emergency brake which, when set, automatically detached the clutch from the driving gear and so released it from the power generated by the engine. When set, the emergency brake was held in place by a dog or short piece of steel attached to the handle of the brake lever. This dog ran over a ratchet or quadrant corrugated with pawls or teeth. By catching in these pawls, the dog held the brake, and, when the dog was released from the ratchet, the brake would be thrown off and the clutch engaged. To start the truck, when the engine was stopped, the electric switch would first be turned on, and the engine cranked. If the emergency brake was set, the truck could not move forward,

because the clutch would be out and the motive power disconnected. To start the truck with the brake set, the dog on the brake must first be released, whereupon the brake became automatically disengaged and the clutch thrown in, and the truck would move forward. It is manifest that, if the end of the dog or the teeth of the ratchet which held it, when set, were worn, the safety of the brake would be imperiled; also that the danger from these conditions would be greatly enhanced by any vibration or jar sufficient to disturb the dog. Naturally, under the conditions described, it was impossible to crank the engine unless the emergency brake was set.

Having, on the morning of the accident, been ordered out, plaintiff went to the garage where the truck was standing head-on and a short distance from a wall of the building. Having set the emergency brake, plaintiff turned on the switch and proceeded to crank the engine. After having given the crank handle about a dozen turns, he heard the emergency brake "fall" or "jump down," and thereupon the truck moved forward, crushing him between the bumper of the truck and the wall of the building or a radiator which stood next to the wall, whereby he sustained severe and permanent injuries. Defendant had bought the truck secondhand, and, when bought, it is not disputed that the pawls and the end of the dog by which it (or they) were engaged were much worn, which fact was brought to the attention of defendant's president. Some time before the accident, the mechanic, whose duty it was to make permanent repairs to the truck, was directed to procure and did procure one or more new dogs, and possibly a new ratchet, although the testimony as to procuring a new ratchet is somewhat vague. But neither dog nor ratchet were installed, because, as the mechanic swore, he had no time. Defendant's president testified that he had repeatedly ordered the mechanic to put on the new dog, and that a few days before the accident plaintiff had told him he had himself affixed it to the truck. This was denied by plaintiff. It is apparent that the case was one for the jury, inasmuch as it was defendant's duty to furnish plaintiff with reasonably safe apparatus with which to do his work, a duty which it could not delegate. The action was brought under the Employers' Liability Act, as amended in 1910 (Consol. Laws, c. 31, §§ 200–204, as amended by Laws 1910, c. 352), and the question of contributory negligence was for the jury. Moreover, such negligence was not pleaded. The verdict was set aside. solely because the learned trial justice was of the opinion that reversible error had been committed in admitting the testimony of one Zoeller, a witness on behalf of the plaintiff, who testified that some two weeks before the accident he saw the truck standing backed up against the curb while defendant's employés were engaged in loading a heavy object upon the truck, and that in this situation, there being no one at the front of the truck or in the chauffeur's place, the truck moved ahead of its own accord. The attempt to introduce this testimony was repeatedly objected to on the ground that it was incompetent, irrelevant, immaterial, and remote, and after it had been admitted, and the witness had been cross-examined, the defendant moved to strike it out because it was "too remote." I think the

testimony was proper. It is evident that the circumstances pertaining to the starting of the truck on the occasion testified to by Zoeller were practically identical with those existing at the time of the accident, so far as the mechanics of the truck are concerned. The engine must have been running or the truck could not have started, and the brake must have at first been set, otherwise the clutch would have been engaged and the truck would not have stopped still at all. But the fact that it was stopped and then of its own accord moved ahead, under the circumstances testified to, seems to me to have been competent, if not irresistible, evidence that the brake was disengaged, because of some defect in its mechanism, and it was at least reasonable to infer that this arose from the fact that the dog became disengaged from the ratchet. The testimony was ample to show that the defective condition of the dog and/or the ratchet existed prior to the time to which Zoeller testified, as it continued to exist until the accident. The testimony was thus competent. McCarragher v. Rogers, 120 N. Y. 526, 24 N. E. 812. But, if incompetent, the admission of the testimony was not reversible error. It certainly would have been competent if all the conditions attending the occasion testified to by Zoeller had been identical with those existing at the time of plaintiff's accident. Remoteness of time merely bore on the question of the identity of these conditions. If the defendant's objection to the testimony lay in the failure to prove identical or practically similar conditions, the objection should have been put upon this ground, in which case it might have been obviated, and it is too late after verdict to point out that the testimony might have been properly excluded, if the precise ground of objection had been brought to the attention of the court on the trial. Tooley v. Bacon, 70 N. Y. 34; Gurski v. Doscher, 112 App. Div. 345, 98 N. Y. Supp. 588. But any doubt concerning the propriety of not reinstating the verdict because of any error in admitting the testimony of Zoeller must disappear, in view of the fact that the effect of the testimony was merely to show that the defects alleged existed in the truck and that defendant had notice of them, as to which questions there was practically no dispute. Under such circumstances, the admission of cumulative evidence is harmless. Havholm v. Whale Creek Iron Works, 162 App. Div. 354, 147 N. Y. Supp. 856.

The order appealed from should be reversed, with costs to appellant, and the verdict reinstated.

INGRAHAM, P. J., concurs.